UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| EDWARD A. RUFFO, Individually and on Behalf of All Others Similarly Situated,<br><br>            Plaintiff,<br><br>     -against-<br><br>ADIDAS AMERICA, INC.,<br><br>            Defendant. | Case No.<br><br><br><br>**CLASS ACTION COMPLAINT** |

EDWARD A. RUFFO ("Plaintiff") on behalf of himself and all others similarly situated, hereby submits the following Class Action Complaint ("Complaint") against ADIDAS AMERICA, INC. ("Defendant") and upon personal knowledge as to his own acts and status, and upon information and belief, the investigation of his Counsel and the facts that are a matter of public record, as to all other matters, alleges as follow:

## NATURE OF THE ACTION

1.     Plaintiff files this Class action on behalf of himself and all others similarly situated, to obtain restitution and injunctive relief from Defendant.

2.     Recreational and competitive running has been popular for many years. Defendant manufactures, markets, distributes and sells running shoes throughout the United States and globally.

3.     The running shoe market constitutes a significant sector of the sneaker market. Defendant's Director of Running, Mikal Peveto has stated that "3 out of every 10 pairs of shoes sold are running shoes…it is the cash cow for the industry as far as reach and depth."[1] Peveto

---

[1] http://www.forbes.com/sites/darrenheitner/2013/07/29/springblade-is-adidas-single-most-important-running-shoe/

has further stated "What drives the running business is innovation - what you uniquely bring to the runner has a benefit."

4.      To capitalize on the innovation requirements of the lucrative and competitive running industry, Adidas devoted roughly six years to produce and develop the SpringBlade running shoe.

5.      Most traditional running shoes feature an EVA midsole that vertically delivers energy return. In contrast, the Adidas SpringBlade running shoe ("SpringBlade" or "SpringBlades") features 16 forward angled blades made out of high-tech polymer. The elastic blades purportedly react to any environment, compressing and releasing energy to create an efficient, springy push-off. The supposed benefit of the SpringBlade is the concept of energy. Photos depicting the unique design of the SpringBlade appear below.



**PHOTOGRAPH DEPICTING ADIDAS SPRINGBLADE SHOE**



**PHOTOGRAPH DEPICTING ADIDAS SPRINGBLADE SHOE**

6.    Adidas marketed the SpringBlade as being different from its competitors in that it provided "explosive" energy returns which theoretically would enhance the running experience.[2] The concept developed by Adidas of "energy running" was purportedly the single most important thing that the company has done and a major platform for Adidas to compete with its main competitor Nike.

7.    The SpringBlade was released to the market in 2013. Accompanying the launch of the SpringBlade was an extensive marketing campaign.  Reportedly, 98% of moviegoers in the United States saw a Springblade-related advertisement in theaters in August 2013.[3]

---

[2] http://www.marketwired.com/press-release/adidas-unleashes-explosive-energy-with-springblade-1805012.htm
[3] http://www.forbes.com/sites/darrenheitner/2013/07/29/springblade-is-adidas-single-most-important-running-shoe/

8.      The SpringBlade was launched to the market with great fanfare.  The retail cost of a pair of SpringBlades was approximately $180.00 - $200.00.

9.      Unfortunately, despite the six years of development and extensive marketing efforts to the general public, the sole of the SpringBlade was defectively designed and manufactured.  Due to the defective design and manufacture, the sole of the shoe is prone to failure.

10.     The construction of the SpringBlade is unique.  Footwear companies and designers are always looking for new ways to make shoes and to solve the basic footwear functions of performance, comfort and style.

11.     Most athletic footwear uppers are either board lasted or strobel stitch lasted. Some are combination strobel stitched and board lasted. The upper of the SpringBlade design is strobel stitched around the forefoot and then uniquely bonded to the injection molded plastic midsole, at the perimeter sides and heel area.

12.     What is specifically unique about the SpringBlade design is the midsole, and this is where sole failure occurs. The midsole of the SpringBlade is injection molded to have spring-like levers.

13.     Most sport shoes have a foam midsole of varying thickness and a thin rubber outsole. The foam midsole's purpose is to provide cushioning and comfort, while the rubber outsole provides traction and durability. The SpringBlade has rubber outsole pads at the end of each midsole spring blade. The SpringBlade's injection-molded midsole performs the function of comfort and cushioning in a very non-traditional way.

14.     A traditional foam midsole has benefits of bonding well to various other flexible and non-flexible materials. The SpringBlade's midsole is made of a semi-rigid material to give

the spring-like structure required to support the wearer's weight. When the wearer walks and runs, the midsole is loaded and unloaded while flexing in multiple directions. These stresses to the shoe are inherently trying to pull the components of the shoe apart. The design failure in question is at a location where two pieces of semi-rigid plastic are bonded together, which is especially problematic and prone to delamination.

15.     The SpringBlade design fails at the bond of the forefoot and heel components of the injection-molded midsole.  Bonding two semi-rigid components at the forefoot flex area, a known high stress zone, causes a significant at risk of delamination after very little use. Photographs depicting failure of the two semi-rigid components at the forefoot flex area and the two part construction appear below.



**PHOTOGRAPH DEPICTING FAILURE OF SPRINGBLADE SHOE**



**PHOTOGRAPH DEPICTING FAILURE OF SPRINGBLADE SHOE**



**PHOTOGRAPH DEPICTING TWO-PART CONSTRUCTION**

16.     Despite six years of development and extensive testing which should have revealed the defective design of the sole of the SpringBlade, Adidas released the SpringBlade running shoe to the general public representing that its design was the "cutting edge" of running shoe technology and that  warranted that it was suitable for use as a recreational running shoe.

17.     As a result of Adidas' deceptive claims, consumers, including Plaintiff and other members of the proposed Class have purchased an expensive product which fails to perform as advertised and is defectively designed due to the inherent defect in the design of the sole.


**JURISDICTION AND VENUE**

18.     This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. §1332(d) because the aggregate claims of Plaintiff and members of the Class, which exceeds one hundred person, exceed the sum or value of $5,000,000 and there is diversity of citizenship between at least one member of the proposed Class and Defendant.

19.     Venue is proper in this district under 28 U.S.C. §1391(a)(1) and (2). Defendant conducts substantial business throughout New York, and Plaintiff resides in this District.


**PARTIES**

20.     Plaintiff is a resident of the county of Westchester and State of New York. Plaintiff purchased his SpringBlades on-line at Adidas.com and Amazon.com, and in person at Dick's Sporting Goods.

21.     Defendant Adidas America, Inc. is a Delaware corporation whose principal place of business and headquarters is at Adidas Village, 5055 North Greeley Avenue, Portland, Oregon. Adidas America Inc. is the American subsidiary of Adidas AG, a sport apparel

manufacture and joint stock company organized and existing under the Law of the Federal Republic of Germany.  Adidas America, Inc. manufactures, markets, sells and distributes Adidas SpringBlade to American consumers through authorized retailers and through its website throughout the United States, including New York.

22.    Plaintiff believed, and thus alleges, that at all times herein, Defendant's agents, employees, representative and/or partners were acting within the course and scope of such agency, employment and representation of behalf of the Defendant.

## SUBSTANTIVE ALLEGATIONS

23.    Plaintiff purchased several pairs of SpringBlades believing the benefits noted in Defendant's marketing information he saw online and in several articles published in a variety of periodicals.

24.    However, after only a few days of use limited to running on a treadmill, the sole of each pair of Plaintiff's SpringBlades failed at the bonding between the two semi-rigid components at the forefoot flex area.

25.    Plaintiff purchased several pairs of the SpringBlades and used these pairs exclusively for running on a treadmill.

26.    Plaintiff also purchased a pair of the SpringBlade shoes for outdoor use.

27.    Unfortunately, the soles of every single pair of SpringBlades that plaintiff purchased failed at the bonding between the two semi-rigid components at the forefoot flex area.

28.    The SpringBlades used by Plaintiff outdoors failed after a single use.

29.    Plaintiff contacted Defendant several times to advise them of the multiple failures and to obtain a refund.  Defendant failed to respond to him.

30.    Plaintiff subsequently researched reviews of the SpringBlade to learn if other purchasers had experienced similar failures.  Plaintiff then discovered that the defect complained of was one that many other consumers had experienced throughout the United States of America and abroad. [4][5][6][7][8]

31.    Defendant recently redesigned the SpringBlade in an effort to ameliorate the sole failure at the bonding between two semi-rigid components at the forward flex area.  The redesign is called the SpringBlade Ignite.

32.    The sole on the SpringBlade Ignite is significantly different from the SpringBlade in that it utilizes an adiprene+ in an EVA carrier in the forefoot. The alternative design utilizes a traditional running shoe design in the forefoot of the SpringBlade Ignite. Photographs depicting the newly designed sole utilized in the SpringBlade Ignite appear below.



**PHOTOGRAPH DEPICTING SPRINGBLADE IGNITE**

---

[4] http://community.runnersworld.com/topic/adidas-springblade?reply=54354132146583540
[5] http://www.solereview.com/adidas-springblade-review/
[6] http://www.adidas.com/us/springblade-drive-2.0-shoes/D69783.html
[7] http://www.amazon.com/adidas-Mens-Springblade-Drive-Running/dp/B00OKICBIC
[8] http://www.amazon.com/adidas-Mens-Springblade-Running-
Shoe/dp/B00OKICBC8/ref=pd_sim_309_1?ie=UTF8&refRID=08S8NMYBR4M0DTW5F3FT



**PHOTOGRAPH DEPICTING SPRINGBLADE IGNITE**

33.     Upon information and belief, the redesign of the forefoot of the SpringBlade Ignite was due to consumer complaints of sole delamination at the midfoot in SpringBlades.

34.     Notwithstanding, the fact that Defendant is and has been on notice that the sole of the SpringBlade is defective, it continues to market this model on its website at a significantly discounted price of $129.99.[9]

---

[9] http://www.adidas.com/us/springblade?grid=true

35.     Defendant impliedly warranted to members of the general public, including Plaintiff that the SpringBlade was of merchantable quality and was fit to be used as a running shoe.

36.     Plaintiff relied on the skill and judgment of Defendant in the design, and marketing and sale of the SpringBlade as a safe and reliable product fit for use as a running shoe.

37.     The SpringBlade was not of merchantable quality as warranted by Defendant in that it was defectively designed and not suitable for its intended use as a running shoe.

38.     As a result of Defendant's deceptive claims, negligent design, manufacture and marketing of the SpringBlade, consumers, including Plaintiff and other members of the proposed class, have purchased a product that has not been proven to perform as advertised and is not suitable for its intended use as a running shoe due to the defective design of the sole as discussed previously herein.

## CLASS ACTION ALLEGATIONS

39.     Plaintiff brings this Class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of himself and the following Class:

**Nationwide Class**: All persons in the United States who purchased the SpringBlade models which utilized the sole design discussed previously herein within the applicable statutory limitations period, including the period following the filing date of this action.

**New York Subclass**: All New York residents who purchased the SpringBlade models which utilized the sole design discussed previously herein within the applicable statutory limitations period, including the period following the filing date of this action.

40.     Excluded from the Classes are: (1) Defendant, Defendants' subsidiaries, affiliates, officers, directors, assigns and successors, and any entity which Defendant has a controlling

interest; (2) the Judge to whom this case is assigned and any member of the Judge's immediate family; (3) anyone who purchased the aforementioned SpringBlade running shoe utilizing the defective sole design discussed previously herein for the purpose of resale; and (4) anyone asserting claims for personal injury. Plaintiff reserves the right to modify the Class and Subclass definitions as further investigation and/or discovery so warrant.

41.    **Numerosity:** the members of the Class are so numerous that joinder of all members would be impracticable. Plaintiff is informed and believes, and on that basis alleges, that the Class contains thousands of members. The precise number of Class members is unknown to the Plaintiff.

42.    **Commonality:** Common questions of law and fact exist as to all members of the Classes. These common questions predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

  a.    Whether Defendants engaged in false or misleading advertising;

  b.    Whether Defendants' conduct as alleged herein violates the New York Deceptive Acts and Practices Act and/or other States' unfair trade practices acts;

  c.    Whether Defendants' conduct as alleged herein constitutes a breach of warranty;

  d.    Whether Defendants' conduct as alleged herein constitutes unjust enrichment;

  e.    Whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss;

  f.    Whether Defendants conduct violates public policy; and

  g.    Whether Plaintiff and Class members are entitled to declaratory and injunctive relief.

43.  **Typicality:** Plaintiff's claims are typical of the claims of the members of the Classes, as all class members are similarly affected by Defendant's wrongful conduct. Plaintiff, like other members of the Classes purchased the SpringBlades after exposure to the same material misrepresentations and/or omissions in Defendant's marketing and advertising and received a product that was not as represented and was not suitable for the use as a running shoe as represented. The claims of Plaintiff are typical of the claims of the members of the Class because, among other things, Plaintiff asserts the same claims, and all Class members were injured through the uniform misconduct described above.

44.  **Adequacy of Representation:** Plaintiff will fairly and adequately protect the interests of the Class and has retained attorneys experienced in Class and complex litigation. Plaintiff has no interest antagonistic to those of the Class, and Defendant has no defense unique to Plaintiff.

45.  **Superiority:** a Class action is superior to all other available methods for the fair and efficient adjudication of this controversy for the following reasons:

a.  It is economically impractical for members of the Class to persecute individual actions;

b.  The Class is readily definable; and

c.  Prosecution as a Class action will eliminate the possibility of repetitious litigation.

d.  A Class Action will cause and orderly and expeditious administration of the claims of the Class. Economic of time, efforts and expense will be fostered, and uniformity of decisions will be ensured.

e.  Plaintiff does not anticipate any undue difficulty in the management of this litigation.

f.      Plaintiff and the Class expressly exclude any causes of action relative to the

personal injury or other bodily harm arising from Defendants' conduct.

### FIRST CAUSE OF ACTION
### FOR BREACH OF EXPRESS WARRANTY
### (Asserted on Behalf of the Nationwide Class and the New York Subclass)

46.     Plaintiff re-alleges and incorporates by reference the allegations contained in

paragraphs 1-43 above as if fully set forth herein.

47.     Plaintiff and each member of the Class, formed a contract with Defendant at

the time they purchased the SpringBlades utilizing the defective sole alleged herein. The terms

of that contract include the promises and affirmations of fact made by Defendants on the

labels and warranty materials of the SpringBlades and through the advertising and marketing

campaign, as alleged above. The SpringBlades' labeling and advertising constitute express

warranties, are part of the basis of the bargain, and are part of a standardized contract

between Plaintiff and the members of the Classes, on the one hand, and Defendant, on the

other.

48.     Alternatively, privity was established between Defendant and Plaintiff and

Class Members because Defendants, and/or its agents, were substantially, if not completely

responsible for directly promoting and marketing SpringBlades to Plaintiff and Class

Members and Plaintiff and Class Members were directly promoted to and marketed to by

Defendant prior to purchasing SpringBlades, resulting in the purchase of SpringBlades by

Plaintiff and Class Members. By virtue of this direct promotion and marketing to Plaintiff

and Class Members, Defendant directly made an express warranty of the SpringBlades'

attributes and benefits to Plaintiff and Class Members. All conditions precedent to Defendants' liability under the warranty have been performed by Plaintiff and the Classes.

49.     Defendant breached the terms of the express warranty by not providing a product that provided the benefits promised. The statements made by Defendant that warranted that SpringBlades had a superior nature, attributes and benefits were not "puffery" or mere opinion; they were statements and affirmations of specific benefits and superior performance over alternative and lower priced running shoes and also warranted that SpringBlades were designed, manufactured and supplied to be used as a running shoe. Plaintiff and Class Members relied on these representations by Defendant in purchasing SpringBlades instead of less expensive, but equally or more effective alternative running shoes which did not utilize the SpringBlade sole technology.

50.     As a result of Defendant's breach of warranty, Plaintiff and the Classes have been damaged in the amount of the purchase price of the SpringBlades they purchased, and have suffered other damages to be determined by proof at trial.

51.     As a result of Defendant's breach of warranty, plaintiff and the Classes have been damaged in the amount of the purchase price of the SpringBlades they purchased, and have suffered other damages to be determined by proof at trial.


## SECOND CAUSE OF ACTION
## FOR BREACH OF IMPLIED WARRANTY
### (Asserted on Behalf of the Nationwide Class and the New York Subclass)

52.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-49 above as if fully set forth herein.

53.     Prior to the time of the subject accident, defendant impliedly warranted to members of the general public, including plaintiff, that SpringBlades were of merchantable quality and were fit for a particular purpose.

54.     Members of the consuming public, including consumers such as plaintiff, were intended third-party beneficiaries of the implied warranties of merchantability and fitness for a particular purpose.

55.     Plaintiff relied on the skill and judgment of Defendant in the design, marketing and sale of SpringBlades as premium running shoes that were specifically designed to be used as such with normal and expected wear and tear.

56.     The subject SpringBlade shoes were not of merchantable quality as warranted by Defendant, in that they were defectively designed, thereby causing sole failure after little use by the consumer.

57.     Specifically, Defendant warranted:

a.      The SpringBlade was of merchantable quality;

b.      The SpringBlade was fit for a particular purpose of use as an athletic running shoe.

58.     Those representations were false and the Defendant breached said warranties.

59.     As a legal and proximate result of these false representations and breach of said warranties, Plaintiff sustained the damages herein set forth.

**THIRD CAUSE OF ACTION**
**FOR UNJUST ENRICHMENT**
**(Asserted on Behalf of the Nationwide Class and the New York Subclass)**

60.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-57 above as if fully set forth herein.

61.     This claim is asserted in the alternative on behalf of Plaintiff and Class members to the extent that any contracts do not govern the entirety of the subject matter of the dispute with Defendant.

62.     Plaintiff and Class members conferred a tangible economic benefit upon Defendant by purchasing SpringBlades. Plaintiff and Class members would have expected remuneration from Defendant at the time this benefit was conferred had they known that the SpringBlades did not perform as promised and due to the defectively designed sole which would fail after little use by the consumer.

63.     As a direct and proximate result of Defendant's misconduct as set forth above, Defendants have been unjustly enriched at the expense of Plaintiff and Class members.

64.     It would be inequitable for Defendants to retain the profits, benefits and other compensation obtained by its wrongful conduct in marketing and selling of the SpringBlades.

65.     Plaintiff, on behalf of himself and Class members, seeks restitution from Defendants, and an order of this Court disgorging all profits, benefits and other compensation obtained by Defendants from their wrongful conduct.

**FOURTH CAUSE OF ACTION**
**FOR VIOLATIONS OF NEW YORK DECEPTIVE ACTS AND PRACTICES**
**ACT AND VARIOUS CONSUMER PROTECTION ACTS OF OTHER STATES**
**(Asserted on Behalf of the Nationwide Class and the New York Subclass)**

66.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-63 above as if fully set forth herein.

67.     This is a claim for relief under the New York Deceptive Acts and Practices Act, Gen. Bus. Law §§349 and 350, as well as the various Consumer Protection Acts of the jurisdictions in which Class Members are present and purchased SpringBlades, including but not limited to:

a.      Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, *et seq.*;

b.      Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq.*;

c.      Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.*;

d.      California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.,* and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.*;

e.      Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*

f.      Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.*;

g.      Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.*;

h.      District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28 3901, *et seq.*;

i.      Florida Deceptive and Unfair Trade Practices Act, Florida Statutes § 501.201, *et seq.*;

j.      Georgia Fair Business Practices Act, §10-1-390 *et seq.;*

k.      Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 4801A-1, et. seq., and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes §481A-1, *et seq.;*

l.   Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.*;

m.   Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS §50511, *et seq.*;

n.   Kansas Consumer Protection Act, Kan. Stat. Ann Ann. §§50626, *et seq.*;

o.   Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann, §§ 367.110, *et seq.* and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, *et seq.;*

p.   Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et seq.*;

q.   Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.,* and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, §1211, *et seq.*;

r.   Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws Ch. 93A;

s.   Michigan Consumer Protection Act, §§445.901, et seq.;

t.   Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.*;

u.   Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.*;

v.   Missouri Merchandising Practices Act, Mo. Rev. Stat. §407.010, *et seq.*;

w.   Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.*;

x.   Nebraska Consumer Protection Act, Neb. Rev. Stat §59 1601, *et seq.,* and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §87-301, *et seq.*;

y.   Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.*;

z.   New Hampshire Consumer Protection Act, N.H. Rev. Stat. *§* 358-A: I, *et seq.*

aa.   New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 I, *et seq.*;

bb.   New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57 12 1, *et seq.;*

cc.     North Dakota Consumer Fraud Act, N.D. Cent Code §§ 51 1501, *el seq.;*

dd.     Ohio Rev. Code Ann. §§ 1345.02 and 1345.03; Ohio Admin. Code §§109:4·3-02, 109:4-3-03, and 109:4-3-10;

ee.     Oklahoma Consumer Protection Act, Okla. Stat. 15 §751, *et seq.;*

ff.     Oregon Unfair Trade Practices Act, Ore. Rev. Stat § 646.608(e) &(g);

gg.     Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.;*

hh.     South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq;*

ii.     South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et seq.,*

jj.     Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq.;*

kk.     Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.;*

ll.     Washington Consumer Fraud Act, Wash. Rev. Code § 19.86.010, *et seq.;*

mm.     West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.;*

nn.     Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *el seq.*

(Collectively, the "Consumer Protection Acts").

68.     The Defendant's acts and omissions as well as its failure to use reasonable care in this matter as alleged in this complaint, including but not limited to, the knowing misrepresentation or failure to disclose the defective design of the sole of the SpringBlade and its inherent design defect leading to premature failure constitute violation of the provisions of the New York Deceptive Acts and Practices Act and the various Consumer Protection Acts.

69.     The Defendant's unconscionable, unfair, and deceptive acts and practices set forth in this Complaint are likely and reasonably foreseeable to mislead Plaintiff and

members of the Class and Subclass acting reasonably in their reliance on Defendant's acts and practices, and to their detriment.

70.     Defendant engaged in the unconscionable, unfair, and deceptive acts or practices set forth in this Complaint in the conduct of trade or commerce.

71.     Defendant's misrepresentations or omissions as set forth in this Complaint are material in that they relate to matters which are important to consumers or are likely to affect the purchasing decisions or conduct of consumers, including Plaintiff and Class Members regarding Defendant's products.

72.     Defendant's business practices, in advertising, marketing, packaging, labeling and sale of the SpringBlade as a unique and superior product despite the defective sole design, justifying substantially higher prices over alternative running shoes is an unconscionable, unfair, and deceptive act or practice, in violation of the New York Deceptive Acts and Practices Act (and the other Consumer Protection Acts), in that it (1) offends established public policy, (2) is immoral, unethical, oppressive, or unscrupulous, and/or (3) is substantially injurious and caused actual damages to consumers, including Plaintiff and Class Members who purchased Defendant's SpringBlade running shoes because of Defendant's representations and conduct

73.     Plaintiff and Class Members have suffered actual damages as a result of Defendant's violation of the New York Deceptive Acts and Practices Act and the various Consumer Protection Acts and are entitled to relief.

74.     As a direct and proximate cause of Defendant's violations of the New York Deceptive Acts and Practices Act and the various Consumer Protection Acts, Plaintiff and the Class Members have incurred harm and damages as described herein, and are entitled to

recover for those damages, including but not limited to, actual damages, costs, attorneys' fees, and injunctive relief, pursuant to New York law, and the various Consumer Protection Acts.

## FIFTH CAUSE OF ACTION
## FOR VIOLATION OF THE OREGON UNLAWFUL TRADE PRACTICES ACT
### (Asserted on Behalf of the Nationwide Class and the New York Subclass)

75.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-72 above as if fully set forth herein.

76.     Oregon Revised Statutes §§ 646.605 to 646.652 prescribe unfair and unlawful trade practices.

77.     Under Oregon Revised Statutes §646.608 it is an unlawful practice to represent that goods have characteristic benefits or qualities that they do not have. It is also unlawful practice for the seller to fail to disclose any known material defect or material nonconformity. *See*, O.R.S. §646.608(t).

78.     Defendant's practices offend public policy, are immoral, unethical and oppressive, and cause substantial injury to the consumer.

79.     Defendant's practices are not outweighed by countervailing benefits to consumers, and could not be reasonably avoided by the consumer.  Information about the defective design of the sole of the SpringBlade was not posted nor provide to consumers either directly by Defendant or at the point of purchase.

80.     Defendant directed its misleading marketing campaign that touted the superior design and features of the SpringBlade, while not disclosing material information about the defective design of the sole which would lead to premature failure.

81.     As a direct and proximate cause of Defendant's violations of the Oregon Unfair Trade Practices Act, Plaintiff and Class Members have incurred harm and damages as described herein, and are entitled to recover for those damages, including but not limited to, actual damages, costs, attorneys' fees, and injunctive relief, pursuant to Oregon Law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself and the members of the Class, prays for Judgment against Defendant as follows:

a.     An order certifying this matter as a class action and appointment of Plaintiff as representative of the Classes and his counsel as Class counsel;

b.     Individual restitution to Plaintiff and each member of the class;

c.     An order requiring imposition of a constructive trust and/or disgorgement of Defendant's ill-gotten gains and to pay restitution to Plaintiff and all members of the Classes and to restore to the Plaintiff and members of the Classes all funds acquired by means of any act or practice declared by this Court to be an unlawful, fraudulent or unfair business act or practice, a violation of laws, statutes or regulations, or constituting unfair competition or false advertising;

d.     Distribution of any moneys recovered on behalf of members of the Classes via fluid recovery or *cy pres* recovery where necessary and as applicable, to prevent Defendant from retaining the benefits of their wrongful conduct;

e.     Compensatory and other damages for economic and non-economic damages identified herein, including all damages allowed by governing statutes;

f.     Statutory pre-judgment and post-judgment interest on any amounts;

g.     Reasonable attorneys' fees as may be allowable wider applicable law;

h.     Costs of this suit; and

i.     Such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action so triable.

Dated: New York, NY
       July 30, 2015

RHEINGOLD VALET RHEINGOLD
MCCARTNEY & GIUFFRA LLP
*Attorneys for Plaintiff*

_____
Thomas P. Giuffra, Esq. (TG 1274)
113 East 37th Street
New York, NY 10016
(212) 684-1880